## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| COMBINED AIRCRAFT OWNERSHIP, LLC, | No.: |
| Plaintiff, | |
| v. | |
| WEST STAR AVIATION, LLC, and JASON COHEN, | |
| Defendants. | |

## COMPLAINT

Plaintiff Combined Aircraft Ownership, LLC, by and through its undersigned counsel, files this Complaint against Defendants West Star Aviation, LLC and Jason Cohen, averring as follows:

## PARTIES

1. Plaintiff Combined Aircraft Ownership, LLC ("CAO") is a North Dakota limited liability company with its principal place of business located at 809 8th Avenue South, Fargo, North Dakota 58103. The members of CAO are adult individuals who are citizens of North Dakota.

2. Defendant West Star Aviation, LLC ("West Star") is a Delaware limited liability company with its principal place of business located at 2 Airline Court, East Alton, Illinois 62024.

3. West Star is an aviation service company that claims expertise in, among other things, the inspection, maintenance, repair and refurbishment of Global Express business jets manufactured by Bombardier Aviation ("Bombardier").

4. Upon information and belief, West Star Aviation Holdings LLC, a Delaware limited liability company, is the sole member of West Star. West Star Aviation Holdings LLC is

1

owned by: Norwest Equity Partners, the trade name for Norwest Venture Capital Management, Inc., a Minnesota corporation; Jim Swehla, an adult individual and citizen of the State of Illinois; Michael L. Durst, an adult individual and citizen of the State of Illinois; and Samuel A. Haycraft, an adult individual and citizen of the State of Illinois.

5. West Star is, therefore, a citizen of the States of Minnesota and Illinois, and no member of West Star Aviation Holdings LLC is a citizen of the State of North Dakota.

6. Defendant Jason Cohen ("Cohen") is an adult individual and, upon information and belief, a resident of the State of Colorado. At all relevant times, Cohen was employed by West Star as its Bombardier Global Express Program Manager.

## JURISDICTION AND VENUE

7. This Court has diversity jurisdiction over the claims in this action arising under state law pursuant to 28 U.S.C. § 1332 because the members of CAO are citizens of North Dakota, and the citizenship of the members of CAO is completely diverse from the members of West Star and Cohen, and because the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

8. The Court has personal jurisdiction over West Star and Cohen because they transact business within North Dakota, both specifically in relation to the facts giving rise to this action and during the general course of their business affairs. Upon information and belief, West Star employees regularly travel to, and transact business within, North Dakota at the Fargo Jet Center, Hector International Airport, 3802 20th Street North, Fargo, North Dakota 58102.

9. A substantial part of the events giving rise to CAO's claims occurred within the judicial district of the United States District Court for the District of North Dakota. Accordingly, venue is appropriate in this district pursuant to 28 U.S.C. § 1391(b)(2).

## FACTUAL BACKGROUND

10. CAO is the registered owner of a Global Express fixed wing multiengine aircraft, Model No. BD-700-1A10, Serial No. 9050, Federal Aviation Administration Registry No. N351LS, manufactured by Bombardier (the "Aircraft").

11. In April 2020, CAO entered into a preliminary agreement with JSSI Parts, LLC. ("JSSI") to purchase a used, replacement right side engine for the Aircraft (Serial No. 12458) (the "Replacement Engine") for $1.9 million dollars. The Replacement Engine was perfectly suited for the Aircraft and was guaranteed to not have more than 1,500 hours of flight time on it. Further, it would not have required a borescope test until incurring 3,500 hours of flight time.

12. In May 2020, CAO engaged West Star and Cohen, who on several occasions represented to CAO that he was an expert in Bombardier Global Express aircraft, to remove the existing engine (Serial No. 12206) (the "Existing Engine") from the right side of the Aircraft, mount the Replacement Engine to be acquired through JSSI onto the Aircraft, and transport the removed Existing Engine to JSSI.

13. To facilitate West Star's work, CAO provided to West Star and Cohen the serial number for the Replacement Engine so that they could perform the required investigation and other due diligence.

14. On or around July 15, 2020, acting in the course and scope of his employment with West Star, and as an authorized agent for West Star, Cohen represented to CAO representatives and pilots that the Replacement Engine that CAO intended to purchase via JSSI and have delivered to West Star previously was involved in a hangar fire and, as such, was damaged, not airworthy and could result in any aircraft flying with the Replacement Engine being "red flagged" and "grounded at any time."

15. At this same time, acting in the course and scope of his employment with West Star, and as an authorized agent for West Star, Cohen further represented to CAO representatives and pilots that:

   a. Since the Replacement Engine had been involved in a hangar fire, West Star refused to install it on the Aircraft;

   b. Documentation existed evidencing that the Replacement Engine had been in a fire and was not airworthy;

   c. CAO should not purchase the Replacement Engine and immediately cancel the purchase order with JSSI;

   d. CAO should have the Existing Engine, which had 4671.3 hours of flight time on it, repaired by Rolls-Royce Canada Ltd. ("Rolls-Royce") through West Star at a significantly higher cost and with additional downtime and delay;

   e. West Star repairs engines such as the Existing Engine "all the time for $2.5 to $3 million" and that West Star "never had one over 10-15%" of that amount; and

   f. Except for the cost for West Star to remove and remount the Existing Engine, West Star would not apply any mark-up to the fee charged by Rolls-Royce "because I want to earn your business."

16. Justifiably relying upon Cohen's representations and expertise, and at his urging, CAO canceled its agreement with JSSI and engaged West Star for the removal, repair, and transport of the Existing Engine.

17. On July 21, 2020, CAO was fraudulently induced by West Star and Cohen to enter into an agreement (Proposal No. 2001768GJT Rev: 2) (the "Fraudulent Agreement") under which West Star would remove the Existing Engine, transport it to and from Rolls-Royce's facility in Montreal, Canada for repair, and reinstall the Existing Engine onto the Aircraft for a fee of $3,357,572.00.

18. The Aircraft was delivered to West Star in August of 2020, at which time West Star removed the Existing Engine and had it transported to Rolls-Royce in Montreal.

4

19. On October 23, 2020, after CAO had already paid $3.2 million dollars to West Star, CAO first learned from Essex Aviation ("Essex") that, contrary to Cohen's numerous representations, the Replacement Engine had not been damaged in a hangar fire and was airworthy, and that there is no documentation indicating that the Replacement Engine was damaged in a hangar fire. Rather, Cohen concealed from CAO that Rolls-Royce had in the past serviced the Replacement Engine and advised that it would accept the engine into Rolls-Royce's "Corporate Care" plan, which demonstrates the air worthiness of the Replacement Engine.

20. As of November 19, 2020, CAO had paid $4,291,337.04 to West Star under the Fraudulent Agreement, $955,803.82 of which was paid under protest.

21. On December 7, 2020, West Star issued purported final invoices to CAO under the Fraudulent Agreement in the total amount of $3,963,869.50, comprised of: (a) the fee allegedly charged by Rolls-Royce ($3,921,178.52); and (b) charges for the labor and materials furnished by West Star to remove and remount the Existing Engine and to store and service the Aircraft's left side engine ($42,691.59).

22. Contrary to Cohen's representations, however, the December 7, 2020 invoice issued by West Star for Rolls-Royce's alleged fee fraudulently included a mark-up for West Star in the amount $66,454.00.

23. On December 7, 2020, CAO paid $42,691.59 to West Star under protest in order to obtain the release of the Aircraft.

24. As a direct and proximate result of West Star and Cohen's tortious misconduct, CAO unnecessarily paid in excess of $4.3 million dollars for the repair of the Existing Engine, and incurred more than 3 months of delay and an inability to use the Aircraft, instead of purchasing

and installing the Replacement Engine through JSSI at the much lower cost of approximately $1.9 million dollars.

## COUNT I
## DECEIT (N.D.C.C. §§ 9-03-08 & 9-10-03)
## CAO vs. COHEN

25. The averments of paragraphs 1 through 24 are incorporated by reference as if fully set forth herein.

26. As averred herein, Cohen made affirmative, false representations of material fact to CAO, known to be untrue and/or having no reasonable grounds for believing them to be true, with the intent to deceive CAO and induce it to cancel its purchase order with JSSI and enter into the Fraudulent Agreement.

27. Cohen further suppressed and concealed the fact that the Replacement Engine was never damaged in a hangar fire and that there is no documentation indicating same, and that Rolls-Royce had in the past serviced the Replacement Engine and advised that it would accept the engine into Rolls-Royce's "Corporate Care" plan, which demonstrates the air worthiness of the Replacement Engine, which suppression and concealment misled CAO.

28. Cohen's intentional misrepresentations of material fact and concealment were material to the transactions consummated by CAO.

29. Cohen deliberately intended to mislead and deceive CAO into relying upon his active misrepresentations and concealment.

30. Cohen knew that his representations were false, and that he was concealing material facts from CAO.

31. Cohen's misrepresentations and concealment were done with the intent of inducing, and did in fact induce, CAO to cancel its purchase order with JSSI and enter into the Fraudulent Agreement.

32. CAO was unaware of the falsity of Cohen's statements and representations, and justifiably relied upon them in deciding to cancel its purchase order with JSSI and enter into the Fraudulent Agreement.

33. Cohen's acted with malice and reckless indifference to the rights of CAO, and his misconduct was willful and wanton as it was designed to extract as much money as possible from CAO.

34. As a direct and proximate cause of Cohen's tortious conduct CAO has sustained, and will continue to sustain, damages well in excess of $75,000.00.

## COUNT II
## DECEIT (N.D.C.C. §§ 9-03-08 & 9-10-03)
## CAO vs. WEST STAR

35. The averments of paragraphs 1 through 34 are incorporated by reference as if fully set forth herein.

36. As averred herein, Cohen made the misrepresentations of material fact to CAO and/or suppressed and concealed material facts from CAO, while acting within the scope of his employment with West Star and as West Star's actual, authorized agent.

37. As averred herein, acting within the scope of his employment with West Star, and as West Star's actual, authorized agent, Cohen made affirmative, false representations of material fact to CAO, known to be untrue, with the intent to deceive CAO and induce it to cancel its purchase order with JSSI and enter into the Fraudulent Agreement.

38. Acting within the scope of his employment with West Star, and as West Star's actual, authorized agent, Cohen further suppressed and concealed the fact that the Replacement Engine was never damaged in a hangar fire and that there is no documentation indicating same, and that Rolls-Royce had in the past serviced the Replacement Engine and advised that it would accept the engine into Rolls-Royce's "Corporate Care" plan, which demonstrates the air worthiness of the Replacement Engine.

39. Cohen's intentional misrepresentations and concealment were material to the transactions consummated by CAO.

40. Cohen deliberately intended to mislead and deceive CAO into relying upon his active misrepresentations and concealment.

41. Cohen knew that his representations were false, and that he was concealing material facts from CAO.

42. Cohen's misrepresentations and concealment were done with the intent of inducing, and did in fact induce, CAO to cancel its purchase order with JSSI and enter into the Fraudulent Agreement.

43. CAO was unaware of the falsity of Cohen's statements and representations, and justifiably relied upon them in deciding to cancel its purchase order with JSSI and enter into the Fraudulent Agreement.

44. Cohen's acted with malice and reckless indifference to the rights of CAO, and his misconduct was willful and wanton as it was designed to extract as much money as possible from CAO.

45. As a direct and proximate cause of Cohen's tortious conduct CAO has sustained, and will continue to sustain, damages well in excess of $75,000.00.

46. Under the doctrine of respondeat superior, West Star is liable for the intentional tortious acts of Cohen committed while acting within the scope of his employment with West Star and as West Star's actual, authorized agent.

**COUNT III**
**FRAUD (N.D.C.C. §§ 9-03-08 & 9-09-02)**
**(IN THE ALTERNATIVE)**
**CAO vs. COHEN**

47. The averments of paragraphs 1 through 24 are incorporated by reference as if fully set forth herein.

48. As averred herein, Cohen made affirmative, false representations of material fact to CAO, known to be untrue, with the intent to defraud CAO and induce it to cancel its purchase order with JSSI and enter into the Fraudulent Agreement.

49. Cohen further suppressed and concealed the fact that the Replacement Engine was never damaged in a hangar fire and that there is no documentation indicating same, and that Rolls-Royce had in the past serviced the Replacement Engine and advised that it would accept the engine into Rolls-Royce's "Corporate Care" plan, which demonstrates the air worthiness of the Replacement Engine, which suppression and concealment misled CAO.

50. Cohen's intentional representations and concealment were material to the transactions consummated by CAO.

51. Cohen deliberately intended to mislead and defraud CAO into relying upon his active misrepresentations and concealment.

52. Cohen knew that his representations were false, and that he was concealing material facts from CAO.

53. Cohen's misrepresentations and concealment were done with the intent of inducing, and did in fact induce, CAO to cancel its purchase order with JSSI and enter into the Fraudulent Agreement.

54. CAO was unaware of the falsity of Cohen's statements and representations, and justifiably relied upon them in deciding to cancel its purchase order with JSSI and enter into the Fraudulent Agreement.

55. Cohen's acted with malice and reckless indifference to the rights of CAO, and his misconduct was willful and wanton as it was designed to extract as much money as possible from CAO.

56. CAO's consent to the Fraudulent Agreement was unlawfully obtained by Cohen through his fraudulent acts and omission averred herein.

57. As a direct and proximate cause of Cohen's tortious conduct CAO in entitled to rescission of the Fraudulent Agreement and restitution.

## COUNT IV
## FRAUD (N.D.C.C. §§ 9-03-08 & 9-09-02)
## (IN THE ALTERNATIVE)
## CAO vs. WEST STAR

58. The averments of paragraphs 1 through 24 and 47 through 57 are incorporated by reference as if fully set forth herein.

59. As averred herein, while acting within the scope of his employment with West Star and as West Star's actual, authorized agent, Cohen made affirmative, false representations of material fact to CAO, known to be untrue, with the intent to defraud CAO and induce it to cancel its purchase order with JSSI and enter into the Fraudulent Agreement.

60. As averred herein, while acting within the scope of his employment with West Star and as West Star's actual, authorized agent, Cohen further suppressed and concealed the fact that

the Replacement Engine was never damaged in a hangar fire and that there is no documentation indicating same, and that Rolls-Royce had in the past serviced the Replacement Engine and advised that it would accept the engine into Rolls-Royce's "Corporate Care" plan, which demonstrates the air worthiness of the Replacement Engine, which suppression and concealment misled CAO.

61. Cohen's intentional representations and concealment were material to the transactions consummated by CAO.

62. Cohen deliberately intended to mislead and defraud CAO into relying upon his active misrepresentations and concealment.

63. Cohen knew that his representations were false, and that he was concealing material facts from CAO.

64. Cohen's misrepresentations and concealment were done with the intent of inducing, and did in fact induce, CAO to cancel its purchase order with JSSI and enter into the Fraudulent Agreement.

65. CAO was unaware of the falsity of Cohen's statements and representations, and justifiably relied upon them in deciding to cancel its purchase order with JSSI and enter into the Fraudulent Agreement.

66. Cohen's acted with malice and reckless indifference to the rights of CAO, and his misconduct was willful and wanton as it was designed to extract as much money as possible from CAO.

67. CAO's consent to the Fraudulent Agreement was unlawfully obtained by Cohen through his fraudulent acts and omission averred herein.

68. As a direct and proximate cause of Cohen's tortious conduct CAO in entitled to rescission of the Fraudulent Agreement and restitution.

69. Under the doctrine of respondeat superior, West Star is liable for the intentional tortious acts of Cohen committed while acting within the scope of his employment with West Star and as West Star's actual, authorized agent.

**COUNT V**
**NEGLIGENT MISREPRESENTATION (N.D.C.C. §§ 9-03-08 & 9-09-02)**
**(IN THE ALTERNATIVE))**
**CAO vs. COHEN**

70. The averments of paragraphs 1 through 24 are incorporated by reference as if fully set forth herein.

71. As averred herein, Cohen willfully misrepresented to CAO material facts regarding the air worthiness of the Replacement Engine which induced CAO to cancel its purchase order with JSSI and enter into the Fraudulent Agreement and/or was reckless in making such statements and representations without ascertaining the truth thereof.

72. Cohen induced CAO to enter into the Fraudulent Agreement by making untrue positive assertions of materials facts in a manner not warranted by the information available to Cohen.

73. Cohen's grossly negligent representations were material to the transactions consummated by CAO.

74. Cohen willfully and/or recklessly misled and deceived CAO into relying upon his misrepresentations.

75. CAO was unaware of the falsity of Cohen's statements and representations, and justifiably relied upon them in deciding to cancel its purchase order with JSSI and enter into the Fraudulent Agreement.

76. As a direct and proximate cause of Cohen's tortious conduct CAO in entitled to rescission of the Fraudulent Agreement and restitution.

## COUNT VI
## NEGLIGENT MISREPRESENTATION (N.D.C.C. § 34-02-16)
## (IN THE ALTERNATIVE)
## CAO vs. WEST STAR

77. The averments of paragraphs 1 through 24 and 70 through 76 are incorporated by reference as if fully set forth herein.

78. As averred herein, acting within the scope of his employment with West Star, and as West Star's actual, authorized agent, Cohen willfully misrepresented to CAO material facts regarding the air worthiness of the Replacement Engine which induced CAO to cancel its purchase order with JSSI and enter into the Fraudulent Agreement and/or was reckless in making such statements and representations without ascertaining the truth thereof.

79. Cohen induced CAO to enter into the Fraudulent Agreement by making untrue positive assertions in a manner not warranted by the information available to Cohen.

80. Cohen's grossly negligent representations were material to the transactions consummated by CAO.

81. Cohen willfully and/or recklessly misled and deceived CAO into relying upon his misrepresentations.

82. CAO was unaware of the falsity of Cohen's statements and representations, and justifiably relied upon them in deciding to cancel its purchase order with JSSI and enter into the Fraudulent Agreement.

83. As a direct and proximate cause of Cohen's tortious conduct CAO in entitled to rescission of the Fraudulent Agreement and restitution.

84. Under N.D.C.C. § 34-02-16, Cohen's culpable negligence is imputable to West Star.

85. West Star is vicariously liable for Cohen's culpable negligence.

### COUNT VII
### CONVERSION
### CAO vs. WEST STAR

86. The averments of paragraphs 1 through 24 are incorporated by reference as if fully set forth herein.

87. CAO has a general and/or special property interest in the specific and identifiable funds that it paid to West Star for the fraudulently induced repair of the Existing Engine.

88. CAO has a right to possession of the excess specific and identifiable funds that it paid to West Star for the fraudulently induced repair of the Existing Engine.

89. Upon information and belief, West Star deposited these monies into a bank account that it holds at CrossFirst Bank, Account No. XXXXX6420.

90. West Star is under an obligation to deliver the specific funds in question to CAO, but, despite repeated demands from CAO, refuses to do so.

91. Instead, West Star has intentionally detained and exercised unlawful dominion and control over the funds inconsistent with and in defiance of CAO's ownership rights therein.

92. As a direct and proximate cause of Cohen's tortious conduct CAO has sustained, and will continue to sustain, damages well in excess of $75,000.00.

## PRAYER FOR RELIEF

WHEREFORE, CAO respectfully request that that Court enter an Order:

a. Entering judgment in favor of the CAO and against Cohen and West Star, jointly and severally, based upon the unlawful conduct averred herein;

b. Awarding CAO actual, compensatory, incidental and/or consequential damages in excess of $75,000.00;

c. In the alternative, entering an Order rescinding the Fraudulent Agreement, restoring the parties back to their original positions, and awarding CAO rescissory damages;

d. Awarding CAO pre-judgment and post-judgment interest on all amounts awarded and costs; and

e. Granting CAO all such other legal and equitable relief that the Court deems necessary and proper.

## JURY TRIAL DEMAND

Pursuant to Fed.R.Civ.P. 38(b), CAO demands a trial by jury on all claims so triable.

Dated this 15th day of December, 2020.

                                      Respectfully submitted

                                      STEFANSON LAW

By: _____
                                      Randolph E. Stefanson
                                      N.D. I.D. #02643

                                      Bruce A. Schoenwald
                                      N.D. I.D. #03900

                                      403 Center Avenue, Suite 302
                                      Moorhead, MN 56560
                                      (218) 236-1925
                                      rs@stefansonlaw.com
                                      bruces@stefansonlaw.com

                                      TUCKER ARENSBERG, P.C.

                                      Ryan James
                                      Pa. I.D. #82799 (Application for *pro hac*
                                      admission forthcoming)

                                      1500 One PPG Place
                                      Pittsburgh, PA 15222
                                      (412) 566-1212
                                      rjames@tuckerlaw.com

                                      ATTORNEYS FOR PLAINTIFF